[No. B185725. Second Dist., Div. Six. Jan. 4, 2007.]

CITY OF PORT HUENEME, Plaintiff and Appellant, v.
OXNARD HARBOR DISTRICT et al., Defendants and Respondents;
SUE VANCAMP et al., Real Parties in Interest.

512

## COUNSEL

Jenkins & Hogin, Mark Hensley, Christi Hogin, Erika R. Aklufi and Gregg Kovacevich for Plaintiff and Appellant.

Schröeder Comis Nelson & Kahn, and Anson M. Whitfield for Defendants and Respondents Oxnard Harbor District and Board of Harbor Commissioners and for Real Party in Interest Ventura County Railway Company, LLC.

Ferguson, Case, Orr, Paterson & Cunningham, Robert B. England and Sandra M. Robertson for Real Parties in Interest Sue Vancamp, Richard D. Spencer and Robert B. England.

## OPINION

**COFFEE, J.**—In this case of first impression, after granting a rehearing, we again hold that Harbors and Navigation Code section 6077.5 authorizes a harbor district to acquire a railroad without the prior consent of the city in which railroad land is located. The City of Port Hueneme (City) appeals from a judgment of dismissal after the trial court sustained the demurrers of the Oxnard Harbor District (Harbor District), the Ventura County Railway Company (Railway) and other parties to the City's complaint challenging the

Harbor District's acquisition of land without the City's prior consent. We affirm the trial court's order sustaining the demurrers without leave to amend.

## FACTUAL AND PROCEDURAL SUMMARY

The City is a charter city organized under California law. The Harbor District is organized pursuant to Harbors and Navigation Code section 6000 et seq. The board of commissioners of the Harbor District is the governing body of the Harbor District.

The Railway is a limited liability company that owns real property within the City's boundaries consisting of approximately one or two miles of right-of-way, tracks, and the underlying land. The Smith Trusts[1] owned the Railway until November 21, 2003, when they transferred all outstanding membership interests to the Harbor District, pursuant to an agreement for purchase and sale of membership interests. The Harbor District did not seek or obtain the City's consent before it acquired the Railway.

The City filed a petition for writ of mandate and a complaint seeking relief, including an order declaring the actions taken by the Harbor District to acquire the Railway without the City's prior consent void. The Harbor District, the Railway, and the Smith Trusts filed demurrers to the complaint. The trial court sustained the demurrers without leave to amend on the theory that the Harbor District had no obligation to obtain the City's prior consent, because it did not acquire any land when it acquired the Railway. The court relied upon Corporations Code section 17300, which defines a member's interest in a limited liability company as personal property and provides that a member has no interest in specific limited liability company property.

## DISCUSSION

The City contends that the Harbor District's acquisition of the Railway is void because it failed to obtain the City's prior consent to that acquisition as required by Harbors and Navigation Code section 6075. We disagree and affirm because Harbors and Navigation Code section 6077.5 directly authorized the Harbor District to acquire the Railway and its property.

" 'In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' "

---

[1] Real parties in interest Sue Vancamp, Richard D. Spencer and Robert B. England, trustees of the Survivor's Trust and the Marital Trust, the Martin V. Smith and Martha K. Smith 1990 Family Trust, are collectively referred to as "Smith Trusts."

(*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 171 [132 Cal.Rptr.2d 490, 65 P.3d 1255].) We may also consider material documents referred to in the allegations of the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Two separate standards are employed to review the trial court's ruling. (*G.L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1091 [93 Cal.Rptr.2d 292].) We first independently review the trial court's rulings on questions of law (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [35 Cal.Rptr.2d 418, 883 P.2d 960]), such as issues of statutory construction and the application of that construction to a set of undisputed facts. (*Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740].) After conducting a de novo review to determine whether the complaint states sufficient facts to state a cause of action, we apply an abuse of discretion standard to determine whether there is a reasonable possibility that the complaint could be cured by amendment. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

■ The City argues that the Harbor District's acquisition of the Railway is void because it failed to obtain the City's prior consent to that acquisition as required by Harbors and Navigation Code section 6075. Section 6075 provides, with respect to the acquisition of any interest in *lands*, that a harbor district must obtain "the prior consent to the acquisition . . . of the governing body of each district, port, or city in which the lands are located." (§ 6075, subd. (a).)

Citing Corporations Code section 17300, the Harbor District, the Railway, and the Smith Trusts counter that the Harbor District never obtained any interest in land but only acquired a personal property interest in the Railway. Corporations Code section 17300 provides: "A membership interest . . . in a limited liability company constitute[s] personal property of the member or assignee. A member or assignee has no interest in specific limited liability company property." The Harbor District, the Railway and the Smith Trusts thus argue that Harbors and Navigation Code section 6075 did not apply to the Harbor District's acquisition of the Railway. Adopting this theory, the trial court stated: "I think the [L]egislature did what they did. I don't find this to be a situation where statutes need to be rewritten by the Court to make sense. [Corporations Code section 17300] set up this, quote, 'loophole' [which obviated the section 6075 prior consent requirement] and it's not my job to legislate."

*Harbors and Navigation Code Section 6077.5 Authorized the*
*Harbor District to Acquire the Railway Without the City's*
*Prior Consent*

█ The Legislature granted specific powers, including powers to obtain various types of property, to harbor districts in division 8, part 3, chapter 2, article 3 of the Harbors and Navigation Code, sections 6070 to 6086. In Harbors and Navigation Code section 6077.5, the Legislature explicitly authorized harbor districts to acquire "belt or other railroads, . . . towage facilities, and any and all other facilities, aids, equipment, or property necessary for, or incident to, the development and operation of a harbor or for the accommodation and promotion of commerce, navigation, or fishery in the harbor district." Unlike Harbors and Navigation Code section 6075, section 6077.5 does not require harbor districts to obtain the consent of the city containing section 6077.5 property prior to acquiring railroads or other section 6077.5 property.

█ For reasons explained below, we conclude that Harbors and Navigation Code section 6077.5 railroad property includes both real and personal property, and that section 6077.5 authorized the Harbor District to acquire the Railway without the prior consent of the City. (We do not rely on Corp. Code, § 17300 or the theory adopted by the court below.) Nothing in the record suggests that the Railway property in the City is used for any purpose other than those described in section 6077.5.[2]

The Legislature intended Harbors and Navigation Code section 6077.5 to empower harbor districts to acquire railroad property, including land, without obtaining the prior consent of the city in which such property is located. In 1986, when section 6077.5 was added to the Harbors and Navigation Code, California law defined "railroad" very broadly to include "every commercial, . . . and other railway, . . . and each branch or extension thereof, . . . together with all tracks, bridges, . . . rights of way, . . . stations, depots, . . . ferries, yards, grounds, terminals, terminal facilities, structures, and equipment, and *all other real estate*, fixtures, and personal property of every kind

---

[2] The record includes less information regarding the Railway's property in the City than it might had the parties and the trial court scrutinized the powers conferred by the governing statute—Harbors and Navigation Code section 6077.5. The complaint refers to the Railway's "real property located within . . . the City," without a specific description. The record includes a quitclaim deed with information about numbered parcels owned by the Railway within Ventura County which presumably includes those within and outside the City. Other pleadings refer to the Railway's property in the City as "approximately one mile of land, rights of way and track" and "land . . . on which the rail lines are located." The City's reply brief appears to agree that the Railway's real property in the City underlies its tracks: "[T]he [Harbor] District has acquired a railroad and the underlying land . . . ." The City does not claim that any Railway land in the City is used for any purpose other than those described in section 6077.5.

used in connection therewith, owned, controlled, operated, or managed for public use in the transportation of persons or property." (Pub. Util. Code, § 229, italics added; see Historical and Statutory Notes, 38 pt. 2 West's Ann. Harb. & Nav. Code (2001 ed.) foll. § 6077.5, pp. 159–160; Historical and Statutory Notes, 57 pt. 1 West's Ann. Pub. Util. Code (2004 ed.) foll. § 229, p. 89.) The language of section 6077.5 does not suggest that "railroad" means anything other than a railroad as it was (and still is) defined in Public Utilities Code section 229.

We have considered the City's argument that Harbors and Navigation Code section 6077.5 does not authorize harbor districts to acquire railroad land without also obtaining the prior consent of the city containing such land, pursuant to Harbors and Navigation Code section 6075. The City argues that the absence of a phrase such as "notwithstanding any other provision of this part" reflects the Legislature's intention to require harbor districts to obtain the consent of a city containing railroad land, prior to its acquisition, pursuant to section 6075. We disagree.

If the Legislature had intended to require harbor districts to obtain the consent of a city containing Harbors and Navigation Code section 6077.5 property prior to its acquisition, the Legislature obviously had the ability to say so. (See, e.g., *People v. Frawley* (2000) 82 Cal.App.4th 784, 796 [98 Cal.Rptr.2d 555].) For example, in adopting Harbors and Navigation Code section 6077.5.5, a similar statute authorizing the Oxnard Harbor District to acquire airports and roads, the Legislature included a prior consent requirement within section 6077.5.5. (See § 6077.5.5.) The Legislature's failure to include a comparable requirement within section 6077.5 reflects its intention to empower harbor districts to acquire section 6077.5 property (including railroads), without obtaining the prior consent of the city in which the property is located. By empowering harbor districts to do so, the Legislature supported the development of ports that would "[e]ncourage rail service to port areas." (Pub. Resources Code, § 30708, subd. (e).)

We emphasize that, contrary to the concerns expressed in the City's petition for rehearing, our holding herein does not mean that a district "will never be required to seek the consent of a City before acquiring an 'interest in lands' . . . within the City's . . . boundaries." This case is limited to its unique facts: The Harbor District acquired the Railway, including its rights-of-way, which had been used by the Harbor District for decades. The record does not indicate that the nature or volume of Railway business changed as a result of its acquisition by the Harbor District. At all relevant times, a railroad, as defined by California law, includes the right-of-way and land used in connection with the railroad. In this narrow context, we hold that Harbors and Navigation Code section 6077.5 authorized the Harbor District to acquire the Railway without obtaining the prior consent of the City.

We affirm the trial court's ruling sustaining the demurrers without leave to amend. Respondents and real parties in interest are awarded costs on appeal.

Gilbert, P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 21, 2007, S150227.