Filed 6/24/21  Velis v. AT&T Services CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WILLIAM VELIS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>AT&T SERVICES, INC.,<br><br>Defendant and Respondent. | B303011<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV10231) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge.  Affirmed.

Diversity Law Group, Larry W. Lee; Hyun Legal, Dennis S. Hyun; Polaris Law Group, William L. Marder; Law Offices of Choi & Associates, Edward W. Choi for Plaintiff and Appellant.

Paul Hastings, Raymond W. Bertrand, James P. DeHaan for Defendant and Respondent.

Appellant William Velis filed a complaint alleging that his employer, respondent AT&T Services, Inc., violated Labor Code section 226, subdivision (a)(9)[1] (section 226(a)(9)) by failing to identify all applicable hourly rates for overtime wages on its wage statements. Velis sought to represent a class of AT&T's past and present employees who were paid overtime wages. He also sought penalties for the violation under the Labor Code Private Attorneys General Act of 2004 (PAGA) (§ 2698 et. seq.).

AT&T demurred to Velis's second amended complaint (SAC), arguing that its wage statements complied with section 226(a)(9) as a matter of law. The trial court agreed and sustained the demurrer without leave to amend.

Velis now argues that he properly pled a violation of section 226(a)(9) by alleging that AT&T disaggregated overtime wages into "overtime base" and "overtime premium" components and listed different numbers of hours worked at each component rate. We disagree and affirm. Section 226(a)(9) requires employers to provide accurate itemized wage statements showing "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Disaggregating overtime rates and hours does not violate this statutory mandate.

## BACKGROUND

### I. Second Amended Complaint

In the factually sparse SAC, Velis alleged that he was a non-exempt employee of AT&T, a corporation that does business in California. In the first cause of action, for violation of section 226, subdivision (a), Velis alleged that the wage statements

---

[1]All further statutory references are to the Labor Code unless otherwise indicated.

AT&T provided to employees who earned overtime wages did not "identify all applicable hourly rates for overtime wages whenever overtime wages were paid. Specifically, whenever overtime wages were paid, the overtime rates were identified as the regular or 'base' rate of pay and separate line item [*sic*] showing various premium rates of pay. Moreover, the applicable hours for each overtime line item identified different hours. For example, Plaintiff's January 25, 2019 wage statement contained an overtime base line item with a pay rate of $28.7875 per hour at 11.75 hours, while the 'overtime prem 0.5' line item showed a pay rate of $14.3938 per hour at 3.75 hours. This causes significant confusion as it is unclear as to what rate of overtime pay Plaintiff is being paid and how many actual overtime hours for which Plaintiff is actually being paid."

Velis sought to represent a class of past and present non-exempt AT&T employees "who were paid overtime [and] were issued similarly confusing and inaccurate wage statements" any time from March 26, 2018 through the present. He also incorporated his section 226, subdivision (a) allegations into a derivative second cause of action for violation of PAGA. Velis sought PAGA penalties on behalf of all "Aggrieved Employees from March 25, 2018, through the present, for Defendants' violations of Labor Code § 226, arising from Defendants' failure to provide accurate, itemized wage statements in violation of Labor Code § 226."[2]

## II.    Demurrer

AT&T demurred to the SAC for failure to allege facts sufficient to state a cause of action. (See Code Civ. Proc., §

---

[2]Velis used the plural "Defendants" because he included 50 Doe defendants in the SAC.

430.10, subd. (e).) It contended that the first cause of action for violation of section 226, subdivision (a) failed as a matter of law, and that the derivative PAGA cause of action therefore failed as well.

Citing the January 25, 2019 wage statement Velis referenced in the SAC, and concurrently requesting judicial notice thereof,[3] AT&T asserted that the wage statement listed all applicable hourly rates and the hours Velis worked at those rates. Specifically, it contended the January 25, 2019 wage statement showed that Velis worked a total of 35.75 hours: 24.00 "Regular" hours, at a rate of $28.7875 per hour; 11.75 "Overtime Base" hours, at a rate of $28.7875 per hour; and 3.75 "Overtime Prem 0.5" hours, at a rate of $14.3938 per hour. AT&T argued that the Ninth Circuit has interpreted section 226(a)(9) to permit this type of "splitting overtime into its component parts" of a base rate of pay and an overtime premium that is 0.5 times the base rate. (See *Hernandez v. BCI Coca-Cola Bottling Co.* (9th Cir. 2014) 554 Fed. Appx. 661 (*Hernandez*).) It further contended that the Department of Labor Standards Enforcement (DLSE), a state agency authorized to enforce California's labor laws

---

[3]In its ruling on the demurrer, the trial court acknowledged that it could consider the January 25, 2019 wage statement as a "material document[ ] referred to in the allegations of the complaint." (*City of Port Hueneme v. Oxnard Harbor District* (2007) 146 Cal.App.4th 511, 513.) The court also noted that Velis included the January 25, 2019 wage statement in his opposition and did not object to the request for judicial notice. The court nevertheless concluded it was "not necessary" to consider the January 25, 2019 wage statement because "the demurrer can be sustained based on the allegations in the SAC, which include a detailed description of the January [25,] 2019 wage statement."

4

(*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 563), also endorsed the disaggregation of overtime wages by issuing an exemplar wage statement displaying the overtime wage rate as one-half of the regular wage rate.

## III. Opposition and Reply

Velis filed a written opposition to the demurrer. He contended the wage statements inaccurately listed "both the hours and rates for overtime," such that his "overtime rates and hours cannot be ascertained from the information on the four corners of Plaintiff's wage statements." Regarding the January 25, 2019 wage statement in particular, the contents of which he did not dispute, he contended, "it is not clear whether Plaintiff worked 11.75 hours of overtime, or 3.75 hours of overtime, a combination of those hours, or some other hours." Velis distinguished *Hernandez, supra*, 554 Fed. Appx. 661 on the basis that the wage statement at issue there listed the same number of hours worked at each component portion of the disaggregated overtime wage. He urged the court to instead follow *McKenzie v. Federal Express Corp.* (C.D. Cal. 2011) 765 F. Supp. 2d 1222 (*McKenzie*), which he contended was "directly on-point" and held that "listing the overtime rate of ½ of the regular rate violates Labor Code § 226(a)(9) as a matter of law."

Velis did not address AT&T's argument that the DLSE had approved the practice of "splitting overtime into its component parts" through its exemplar wage statement. He also did not seek leave to amend or suggest any possible amendments to the SAC. Instead, he suggested that if the court was "inclined" to sustain the demurrer, it "should hold its ruling in abeyance" and "should permit Plaintiff to conduct discovery to confirm what the actual overtime hours and rates are and how employees are being

5

paid. . . . Plaintiff must be permitted to conduct discovery to determine whether Defendant is paying its employees correctly." Velis did not cite any authority in support of this suggestion.

In its written reply, AT&T reiterated its previous arguments in support of the demurrer and urged the court to follow *Hernandez, supra*, 554 Fed. Appx. 661. Additionally, it disputed Velis's assertion that *McKenzie, supra*, 765 F.Supp.2d 1222 was "directly on-point." AT&T contended that *McKenzie* was distinguishable because the wage statements in that case, unlike those at issue here, did not include a line item for total hours worked. AT&T also highlighted Velis's failure to address its contention that the DLSE had approved "split[ting] the worker's overtime rate into a half-time premium earned on top of a base rate."

## IV.    Tentative Ruling

The court issued a written tentative sustaining the demurrer with leave to amend. In the tentative, the court concluded that Velis failed to plead a violation of section 226(a)(9). It explained: "Taking Plaintiff's allegations to be true, Defendant's wage statements adequately show 'all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.' It is clear that the amount of overtime hours worked is 3.75, because that is the amount of hours for which an overtime premium was paid. The fact that 11.75 hours were paid at a base rate, while only 3.75 of those hours were paid at the premium rate does not, without more, lead to any confusion as to either the total amount of overtime hours or the proper hourly rates."

6

The court further concluded that "[l]isting the overtime premium at 0.5 times—rather than 1.5 times—the regular rate of pay does not constitute a violation of the Labor Code." It observed that Velis "could simply add $28.7875 to $14.3938 in order to determine that his overtime rate was $43.18." The court noted that "the DLSE itself follows this practice in its own sample wage statement," the exemplar wage statement for piece-rate workers AT&T cited in the demurrer. The court also found AT&T's primary cited authority, *Hernandez, supra*, 554 Fed. Appx. 661, analogous because "the plaintiff's wage statements separated overtime base hours from overtime premium hours, paying the former at a normal rate, and paying the latter at a rate of 0.5." The court found Velis's primary cited authority, *McKenzie, supra*, 765 F. Supp. 2d 1222, "inapposite" because *Hernandez* "held that the animating factor behind the *McKenzie* decision was the fact that the wage statements 'did not provide a line item for total hours worked,' and the SAC here did not allege that such a line item was absent." It also rejected *McKenzie* as "simply not persuasive, as it offers an interpretation of Labor Code section 226 that does not accord with that of either the DLSE or the Ninth Circuit Court of Appeals" in *Hernandez*.

The court tentatively rejected Velis's request for discovery. It tentatively allowed leave to amend, however, to the extent that Velis's opposition suggested other possible violations of section 226, subdivision (a).

V.     **Hearing and Supplemental Briefing**

At the hearing on the demurrer, AT&T submitted on the tentative. Velis argued that the demurrer should be overruled because "nothing on the four corners of the pay stub" clearly demonstrated the number of overtime hours he worked. He

7

again distinguished the *Hernandez* wage statements on the ground that they listed the same number of hours on the disaggregated overtime base and overtime premium lines. Velis also argued that the DLSE had not approved the practice of disaggregating of overtime for hourly workers like himself. He contended the exemplar wage statement on which AT&T relied was applicable only to piece-rate workers, and that the DLSE had issued an exemplar wage statement for hourly workers that "requires hourly pay stubs to list 1.5 the base rate of pay" for overtime. Velis additionally clarified that he had no intent to amend the SAC to assert further claims.

In response to Velis's belated argument about the DLSE exemplar wage statements, AT&T contended that the law "merely requires that the pay stubs show the rates and hours worked," and "there's no single uniform way that a pay stub has to reflect this information." AT&T also contended that any concern over the different number of hours on the "overtime base" and "overtime prem" lines "should be addressed through Labor Code section 226, subsection b," which "gives the employee the right . . . to request his or her payroll records so that they can look behind the pay stub to see if they were, in fact paid . . . correctly or if there's any questions."[4] Velis responded that the latter contention proved the wage statements failed to show the information required by section 226.

_____

[4]Section 226, subdivision (b) provides in relevant part that "[a]n employer that is required by this code or any regulation adopted pursuant to this code to keep the information required by subdivision (a) shall afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer."

8

At the conclusion of the hearing, the court gave the parties leave to file supplemental briefs further addressing the DLSE exemplar wage statements. In Velis's supplemental brief, he argued that the DLSE exemplar wage statement for hourly workers was controlling. He bolstered this argument by pointing to language on the DLSE website describing the exemplar for hourly workers as "required by Labor Code section 226(a)." He argued that the language mandated employers of hourly wage workers to emulate the exemplar wage statement for hourly wage workers, which listed the overtime pay rate as 1.5 times the regular rate rather than the disaggregated 0.5 premium shown in the piece-rate exemplar. Velis requested that the court take judicial notice of both DLSE exemplar wage statements, as well as text from the DLSE website.

In response, AT&T disputed Velis's assertion that the language on the DLSE website mandated a specific format for hourly wage statements. It argued that both DLSE exemplar wage statements "are just that—examples." For that reason, it asserted, the disaggregated overtime wage shown on the exemplar wage statement for piece-rate workers could also be used on wage statements for hourly workers. AT&T also pointed out that wage statements found to comply with section 226, subdivision (a) have included lines for total hours worked even though the exemplar wage statement for hourly workers "does not have a line item for 'total hours worked.'"

## VI. Ruling

After receiving and reviewing the supplemental briefs, the court issued a written ruling sustaining the demurrer without leave to amend. The ruling largely tracked the court's tentative ruling summarized above.

9

As in the tentative, the court concluded that the SAC failed to state a claim under section 226(a)(9). The court again found it was "clear that the amount of overtime hours worked is 3.75, because that is the amount of hours for which an overtime premium was paid. The fact that 11.75 hours were paid at a base rate, while only 3.75 of those hours were paid at the premium rate, does not, without more, lead to any confusion as to either the total amount of overtime hours or the proper hourly rates." The court also again concluded that *Hernandez* was more analogous and persuasive than *McKenzie*.

The court took judicial notice of both DLSE exemplar wage statements. It concluded that the DLSE's disaggregation of the overtime wage rate on the piece-rate exemplar indicated its approval of disaggregating overtime wages on wage statements for hourly workers. The court observed that section 226(a)(9) "makes no distinction between piece-rate workers and hourly-paid workers," and the DLSE lacks the power to expand the scope or requirements of the statute. The court also noted that Velis "has identified no statutory authority to support the conclusion that listing a 0.5 premium rate violates section 226(a)(9) for hourly-paid workers but is permitted with respect to piece-rate workers."

Because it concluded that the SAC did not state a claim under section 226(a)(9), the court also sustained the demurrer as to the derivative PAGA claim. The court determined that the SAC could not be amended to state a claim, and rejected Velis's request to hold the ruling in abeyance and grant him additional discovery.

Velis timely appealed.

## DISCUSSION

Velis contends that he adequately pled a violation of section 226(a)(9), and the trial court erred in concluding that his claim was foreclosed under *Hernandez* and the DLSE's exemplar wage statement for piece-rate workers. We disagree.

## I. Governing Legal Standards

We apply a de novo standard in an appeal following the sustaining of a demurrer without leave to amend. (*Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 389 (*Soto*).) "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.) "[I]t is error for a trial court to sustain a demurrer [if] the plaintiff has stated a cause of action under any possible legal theory." (*Aubry v. Tri-City Hospital District* (1992) 2 Cal.4th 962, 967.) However, we must affirm the judgment if any one of the grounds of the demurrer is well taken. (*Ibid.*) Even under the de novo standard of review, the appellant bears the burden of demonstrating error. (*Denny v. Arntz* (2020) 55 Cal.App.5th 914, 920.)

To determine whether Velis stated a cause of action for violation of section 226(a)(9), we must determine what section 226(a)(9) requires of employers. "The proper interpretation of a statute, and its application to undisputed facts, presents a question of law that is also subject to de novo review." (*Morgan v. United Retail, Inc.* (2010) 186 Cal.App.4th 1136, 1142 (*Morgan*).) "The rules governing statutory interpretation are well-settled. We begin with the fundamental principle that '[t]he objective of statutory construction is to determine the intent of the enacting

11

body so that the law may receive the interpretation that best effectuates that intent. [Citation.]' [Citation.]" (*Ibid.*) We look first to the words of the statute, giving them their ordinary meanings. We give effect to every word and clause, avoiding constructions that render portions meaningless or inoperative. (*Ibid.*) If there is no ambiguity in the language, we presume the plain meaning of the statute governs. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)

If the statutory language is ambiguous or susceptible to more than one reasonable interpretation, we may turn to extrinsic aids to assist in our interpretation. (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at p. 1103.) Such aids may include opinion letters and other materials issued by the DLSE, which, while not binding on the court, are entitled to consideration and respect. (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 841; *Morgan*, *supra*, 186 Cal.App.4th at p. 1147.) We also consider analyses and interpretations of the statute by other courts. We keep in mind that "'in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours, and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' [Citation.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026-1027.)

II.    **Analysis**

Section 226(a)(9) requires an employer to "furnish to his or her employee . . . an accurate itemized wage statement in writing showing . . . all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." (§ 226(a)(9).) Employees generally

12

are entitled to earn an overtime rate of pay "of no less than one and one-half times the regular rate of pay" for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek." (§ 510, subd. (a).) The plain language of section 226(a)(9) requires wage statements to "show," or "make evident or apparent," each hourly rate and the number of hours the employee worked at each rate, including overtime hours. (*Morgan*, *supra*, 186 Cal.App.4th at p. 1146.)

"The purpose of the wage statement requirement is to provide transparency as to the calculation of wages." (*Morgan, supra*, 186 Cal.App.4th at p. 1149, citing DLSE Opn. Letter No. 2006.07.06.) "A complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law and that deductions from wages are proper." (DLSE Opn. Letter No. 2006.07.06; see also *Soto, supra*, 4 Cal.App.5th at p. 393 ["The purpose of requiring greater wage stub information is to insure that employees are adequately informed of compensation received and are not shortchanged by their employers." (emphases omitted)].)

A wage statement need not perform every single calculation necessary for the employee's verification of his or her pay to comply with section 226, subdivision (a). For instance, in *Morgan*, *supra*, 186 Cal.App.4th at p. 1136, the court held that a wage statement complied with the section 226, subdivision (a)(2) requirement to show "total hours worked by the employee" by listing the total number of regular hours worked and the total number of overtime hours worked; the wage statement did not

13

also need to include a line adding those two figures. *Morgan* emphasized that the employee "could determine the sum of all hours worked without referring to time records or other documents," and held that requiring the employee to "simply add together the total regular hours figure and the total overtime figure" did not constitute a violation of section 226, subdivision (a)(2). (*Ibid.*)

We find *Morgan* persuasive.[5] The Ninth Circuit did as well. *Hernandez, supra,* 554 Fed. Appx. at p. 662 cited *Morgan, supra,* 186 Cal.App.4th 1136, for the proposition that "[w]age statements comply with § 226(a) when a plaintiff employee can ascertain the required information by performing simple math, using figures on the face of the wage statement." It then held that the wage statement at issue met that standard, because "Hernandez need only subtract his regular hours from total hours to determine overtime hours worked during the pay period.

---

[5]Our colleagues in the Division One of the Fourth Appellate District also agreed with *Morgan* in an opinion filed after this case was submitted. (See *General Atomics v. Superior Court of San Diego County* (2021) ___Cal.App.5th___, ___ , 2021 Cal.App. LEXIS 452 (*General Atomics*).) *General Atomics* held that a wage statement that displayed an hourly worker's earnings in two categories, a regular rate and an overtime rate of 0.5 times the regular rate, did not violate section 226(a)(9). It emphasized *Morgan*'s holding "that a wage statement does not violate section 226 even if it requires the employee to perform simple math to obtain the required information," and concluded that the plaintiff employee could "readily use the information in the wage statement" — including a line listing total hours worked — "to arrive at the item [the plaintiff] claims is missing, i.e., the statutory 1.5x overtime rate." (*General Atomics, supra,* 2021 Cal.App. LEXIS at pp. *14-*15.)

14

Similarly, he can add the two component overtime rates to determine his overall overtime rate." (*Ibid.*)  The court observed that the wage statement's inclusion of a line item showing the total number of hours worked "allow[ed] Hernandez to do the math to determine the § 226(a)-required information." (*Ibid.*)

The wage statement in *Hernandez* was described in the underlying district court case *Hernandez* affirmed, *Hernandez v. BCI Coca-Cola Bottling Co.* (C.D. Cal. Apr. 12, 2012, No. CV 11-9484 SVW (SSx)) 2012 U.S. Dist. LEXIS 55301 [nonpub. opn.]. The wage statement divided Hernandez's pay into three separate lines: an "Hourly Pay" line, showing 40.00 hours worked at a rate of $21.9300 per hour; an "OT Base 100%" line, showing 0.50 hours worked at a rate of $21.9300 per hour; and an "OT Prem 50%" line, showing 0.50 hours worked at a rate of $10.9650 per hour. (*Hernandez v. BCI Coca-Cola Bottling Co.*, *supra*, 2012 U.S. Dist. LEXIS 55301, at p. *3.)  At the bottom of the statement, a line labeled "TOT WKD HRS\WAGES" indicated that Hernandez worked a total of 40.50 hours and earned a total of $893.65 during the pay period. (*Ibid.*)

The federal district court rejected Hernandez's argument that the statement violated section 226(a)(9) by disaggregating the overtime rate into two components, "OT Base 100%" and "OT Prem 50%," that must be added together to calculate the overtime wage. (*Hernandez v. BCI Coca-Cola Bottling Co.*, *supra*, 2012 U.S. Dist. LEXIS 55301, at pp. *8-*9.)  It held that *Morgan*, *supra*, 186 Cal.App.4th 1136 controlled, and that listing the overtime wage as two component parts was "sufficient to 'show'— i.e., 'to make evident or apparent'—that the employee's effective overtime rate is equal to 21.93 + 10.965 = 32.895." (*Id.* at p. *9.) The federal district court also rejected Hernandez's contention

15

that the wage statement was inaccurate because it "display[ed] the number of overtime hours worked by an employee twice." (*Id.* at p. \*10.) It held that "any potential confusion created by displaying the number of overtime hours twice is mitigated (if not eliminated) by the inclusion of the total number of hours worked on the statement." (*Ibid.* at p. \*13.) As previously indicated, the Ninth Circuit affirmed the district court in *Hernandez, supra*, 554 Fed. Appx. 661.

Velis contends the wage statement in *Hernandez*—and therefore the holding in *Hernandez*—is distinguishable. He asserts, "Unlike the wage statements in *Hernandez* wherein the OT rate was clearly identified on two separate line items containing the **_same_** number of overtime hours, here, the wage statements provided to employees listed two **_completely different_** number [sic] of overtime hours, 11.75 for Overtime Base and 3.75 for Overtime Prem 0.5. An employee would not know which item is for overtime and which is for regular pay." AT&T responds that the number of hours worked at the disaggregated overtime wage rates "was immaterial to *Hernandez*'s holding," and *Hernandez* "never said paystubs must also list the same number of base and premium hours."

AT&T has the better argument. Section 226(a)(9) requires only that wage statements report "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." The wage statements in *Hernandez* and this case meet that standard. Both disaggregate the overtime wage rate of 1.5 times the regular rate into component parts: an "overtime base" rate that is the regular rate, and an "overtime premium" rate that is one-half the regular rate. As in *Hernandez*, Velis can see all the applicable rates at

16

which he worked, and "add the two component overtime rates to determine his overall overtime rate." (*Hernandez*, *supra*, 554 Fed. Appx. at p. 662.) He can also determine the number of hours for which he earned the full overtime rate by looking at the number of hours paid at the "overtime premium" rate, and can use other lines on the wage statement, such as the total number of hours worked and total compensation, to confirm he was paid appropriately.

The conclusion that disaggregated overtime wages and hours are permitted by section 226(a)(9) is bolstered by the DLSE's use of a disaggregated overtime wage rate in its exemplar wage statement for piece-rate workers . Section 226(a)(9) does not establish different wage statement standards for hourly and piece-rate workers,[6] and the DLSE "cannot alter or amend the statute which it is interpreting, or enlarge or impair its scope." (*Adamek & Dessert, Inc. v. Agricultural Labor Relations Board* (1986) 178 Cal.App.3d 970, 978.) By using a 0.5 overtime premium in the exemplar wage statement for piece-rate workers, the DLSE has indicated its approval of the disaggregation of overtime pay rates for piece-rate and hourly workers alike. (See *General Atomics*, *supra*, 2021 Cal.App. LEXIS 452, at p. *22.) The DLSE's use of the phrase "required by Labor Code section 226(a)" in describing the exemplar does not convince us otherwise. If, as

---

[6]Only one of the nine subdivisions of section 226, subdivision (a) mentions piece-rate workers. Section 226, subdivision (a)(3) requires a wage statement to show "the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis." This explicit mention of piece-rate workers shows that the Legislature knew how to distinguish between types of workers if it wished to do so in other subdivisions of the statute.

17

Velis suggests, the phrase means employers must issue wage statements in exact conformance with the exemplar, then any employer who included a line showing the total hours worked by an hourly employee would be in violation of section 226(a)(9), because that information is not included on the exemplar for hourly workers. Such a result is absurd, particularly where courts have found that a line item detailing total hours worked is important in "allowing [employees] to do the math to determine the § 226(a)-required information." (*Hernandez*, *supra*, 554 Fed. Appx. at p. 662.)

Velis contends *McKenzie*, *supra*, 765 F. Supp. 2d 1222, compels the opposite conclusion. We disagree. The wage statement at issue in *McKenzie* disaggregated overtime the same way Velis alleges here—"Reg. Earn.," "Overtime," and "OvrTimePrm." It did not, however, include any indication of the total number of hours an employee worked. (See *McKenzie*, *supra*, 765 F.Supp.2d at p. 1226.) Thus, an employee confronted with lines showing 40.00 hours of "Reg. Earn.," 9.12 hours of "Overtime," and 9.12 hours of "OvrTimePrm" on his or her wage statement would be unable to ascertain whether his or her pay should be for 49.12 hours or 58.24 hours without consulting additional documents. (*McKenzie*, *supra*, 765 F. Supp. 2d at pp. 1226, 1229.) Here, the parties agree the wage statement contains a line listing the total hours worked. We agree with *Hernandez, supra*, 554 Fed. Appx. at p. 662, that this line enables Velis "to do the math to determine the § 226(a)-required information" from the other information on the wage statement. (See also *General Atomics*, *supra*, 2021 Cal.App. LEXIS 452, at p. *17.)

Velis also looks for support in *Wright v. Renzenberger* (C.D. Cal. March 8, 2018) 2018 U.S. Dist. LEXIS 234702 [nonpub. opn.] (*Wright*). We agree with AT&T that *Wright* is distinguishable. In *Wright*, the wage statements "showed the overtime rate at one-half of the regular rate instead of one and one-half the regular rate and . . . included overtime hours in the regular earnings line." (*Wright*, *supra*, 2018 U.S. Dist. LEXIS 234702 at p. *29.) Thus, "unlike *Hernandez*, the wage statements [in *Wright* did] not provide for the full overtime rate in two component parts which are set side from the regular rate and which can easily, and sensibly, be added together to show the correct overtime rate." (*Id*. at p. *32.) "Instead, the (partial) overtime rate on [the] pay stubs must be added to the regular rate for the employee to calculate the correct overtime rate." (*Ibid*.) That is not the case here, where the overtime wage rate is disaggregated into two clearly identified component parts that are entirely separate from the line showing "regular" pay.

## DISPOSITION

The judgment is affirmed. AT&T is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J.                                    CURREY, J.


19