Filed 11/21/22  Farzam v. Anthony Mason Associates CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SIROOS FARZAM et al., | B311890 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV16404) |
| ANTHONY MASON ASSOCIATES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Andrade Gonzalez, Sean A. Andrade, Henry H. Gonzalez and Stephen V. Masterson for Plaintiffs and Appellants.

Akerman, Brenda K. Radmacher and Christine B. Gardner for Defendant and Respondent.

_____

A luxury hotel was built in Santa Monica, without approval by the California Coastal Commission (CCC). In 2019, the CCC imposed monetary sanctions and room-rate restrictions, as a condition of issuing an after-the-fact permit for the hotel. Two lenders who funded construction of the hotel sued a construction manager, claiming the manager is responsible for impairing the value of their security, caused by the room-rate restrictions. The trial court sustained demurrers, without leave to amend.

On de novo review, we conclude that the lenders, appellants Siroos and Gina Farzam, cannot state a claim. In 2009, appellants' son—on behalf of the property owner—applied for, and the CCC authorized, construction of a "low to moderate priced Travelodge." Appellants had no reasonable expectation their loan would be secured by a "boutique luxury hotel." The construction manager is not responsible for the hotel owner's excessive room rates. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY[1]

In 2011, appellants loaned $58 million (Loan) to their own entity, Sunshine Enterprises, L.P. (Sunshine), to finance construction of the Shore Hotel (Hotel) on Ocean Avenue in Santa Monica. The trial court took judicial notice of Sunshine's Certificate of Limited Partnership, which was signed by Siroos Farzam and filed with the California Secretary of State. The Loan is secured by a first deed of trust on Hotel. Sunshine built and operates Hotel.

Respondent Anthony Mason Associates, Inc. (AMA) is a manager hired to oversee construction of Hotel. AMA allegedly represented that it has extensive experience navigating the

---

[1] The facts are from the first amended complaint (FAC).

2

approval process and would oversee and coordinate planning approvals, building permits, and similar jurisdictional agency requirements. AMA promised to " 'continually oversee[] the quality of work generated by the entire team throughout the duration of the project.' "[2]

Relying on these assurances, Sunshine constructed Hotel "under the mistaken belief that Defendants had secured all appropriate permits, approvals, and authorizations" from the City of Santa Monica and the CCC. Contrary to Sunshine's belief, the permits were never issued.

The FAC states, "On January 15, 2014, the California Coastal Commission issued a Notice of Violation [NOV] of the California Coastal Act stating that . . . no coastal permits had been issued for the demolition of two previous motels or for the construction of the Shore Hotel, and that, rather than the moderately priced Travel Lodge that had been conditionally permitted, the Shore Hotel was an unauthorized luxury boutique hotel that did not serve the Coastal Act's goal of assuring affordable overnight accommodations along the coast." The NOV "threatened a cease and desist order and penalties of up to $15,000 per day of violation." The CCC "encouraged Sunshine to negotiate a resolution including payment of an appropriate penalty and conditions on future operation of the Shore Hotel designed to foster public access to the coast."

The CCC and Sunshine negotiated a resolution of their dispute. In May 2019, the CCC set the monetary penalty at $15,581,000, which Sunshine paid in August 2019. The CCC

---

[2] At the trial court hearing, the parties said they have no copy of a written contract between AMA and Sunshine.

issued an after-the-fact permit allowing Hotel to operate, subject to conditions that run with the land and are binding on future owners. One condition is that Sunshine is limited to charging $150 per night for 72 of Hotel's 164 rooms. Appellants allege, "These perpetual Conditions—caused by Defendants' negligent failures to timely obtain all required government agency permits and approvals—impaired the Farzams' security by significantly reducing the market value" of Hotel.

Sunshine and appellants filed suit in April 2020 against AMA, the contractor that built Hotel, and the architect who designed it. Appellants' sole claim against AMA is for negligent impairment of security.

AMA demurred. As to the impairment of security claim, AMA asserted that appellants failed to show the elements of actionable negligence because there is no duty of care, breach of a duty, causation, or injury. AMA asked the court to take judicial notice of the NOV as "official government acts and records." The court granted the request for judicial notice.

At the hearing on the demurrer, counsel agreed that in 2009 the CCC conditionally authorized a coastal development permit (CDP), which limited room rates, before appellants made the Loan. In 2014, the CCC learned that Sunshine was charging excessive room rates. The court observed that there is no contract between appellants and AMA, and no facts "were alleged or could be alleged that would be beyond speculation that somehow the Loan has suffered some detriment." Appellants argued that loss in value of a security is a question of fact. The court noted that the room rate restrictions dated to 2009, so "this was always established, always going to be the deal," regardless of what the defendants did.

4

The court sustained a demurrer to appellants' impairment of security claim, without leave to amend. It found appellants did not show they are damaged by the CCC's restrictions. They did not assert facts showing how the restriction impaired their first trust deed: There is no allegation that Sunshine is in default or unable to make payments on the Loan. The court noted "a potential statute of limitations issue" because the NOV issued in 2014, six years before appellants filed suit.

On January 12, 2021, the court entered judgment in favor of AMA. The Farzams appeal the judgment of dismissal.[3]

**DISCUSSION**

**1. Appeal and Review**

Appeal lies from a judgment of dismissal after demurrers are sustained without leave to amend. (Code Civ. Proc., §§ 581d, 904.1, subd. (a)(1); *Serra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 667.) "For purposes of reviewing a demurrer, we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).)

**2. We May Consider the Contents of the NOV**

The NOV is alleged in paragraphs 36 to 38 of the FAC. Appellants do not discuss it in their opening brief, except with respect to the statute of limitations. Not until their reply brief do appellants assert that this court cannot consider the contents of

---

[3] Sunshine was listed on the notice of appeal but did not file a brief. On November 9, 2021, this court dismissed the appeal with respect to codefendants Benchmark Contractors, Inc., and M. Arthur Gensler Jr. & Associates, Inc.

the NOV.  We disagree with their belated claim that only the existence of the NOV can be considered.

Courts may "consider material documents referred to in the allegations of the complaint."  (*City of Port Hueneme v. Oxnard Harbor Dist.* (2007) 146 Cal.App.4th 511, 514.)  On demurrer, when the superior court grants a request for judicial notice of official documents, we "take notice of their existence and contents, though not of disputed or disputable facts stated therein."  (*Yvanova, supra,* 62 Cal.4th at p. 924, fn. 1 [court considered the existence and contents of a recorded deed of trust, assignment, substitution of trustee, notices of default and sale, and trustee's deed upon sale].)  Appellants do not dispute the veracity of the NOV, which falls within an exception to the hearsay rule.  (Evid. Code, § 1280.)

The FAC alleges more than the bare existence of the NOV; it describes portions of the NOV for the truth of its statements.  The NOV led to Sunshine's settlement with the CCC and appellants' alleged injury.  As alleged in the FAC, the NOV states that "no coastal permits had been issued for the demolition of the two previous motels or for the construction of the Shore Hotel, and that, rather than the moderately priced Travel Lodge that had been conditionally permitted, the Shore Hotel was an unauthorized luxury boutique hotel."

Evidence Code section 356 "prevent[s] the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed." (*People v. Arias* (1996) 13 Cal.4th 92, 156.)  When applying this rule of completeness, " 'the courts do not draw narrow lines around the exact subject of inquiry' " and the entirety is placed in evidence if it has " ' "some bearing upon, or connection with" ' "

6

the part the proponent cites.  (*People v. Zapien* (1993) 4 Cal.4th 929, 959, italics omitted.)  Appellants described part of the NOV in their pleading, opening the door to an examination of the entirety of this public record.

### 3.  The FAC Does Not State An Impairment Claim

"Real property, as security, affords a mortgagee his primary, and in many cases his sole, means of repayment of a debt should the mortgagor default.  Generally speaking, impairment of security is that circumstance where the mortgaged property's value no longer assures satisfaction of the debt." (*Brown v. Critchfield* (1980) 100 Cal.App.3d 858, 869; *Pacific Inland Bank v. Ainsworth* (1995) 41 Cal.App.4th 277, 281.)

Trust deed beneficiaries may sue a third party tortfeasor for negligent impairment of their security.  (*U. S. Financial v. Sullivan* (1974) 37 Cal.App.3d 5, 13–14.)  A claim requires "acts of negligence where it is reasonably foreseeable that such negligence would result in the impairment of the security interest."  (*Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 403 (*Baldwin*).)

The FAC alleges that AMA owed a duty to Sunshine to secure and maintain compliance with all necessary permits while assisting in the development of the Hotel.  AMA's duty "extended to the Farzams as beneficiaries of a deed of trust securing their loan to Sunshine."  AMA's breach of its duty resulted in an unpermitted development; appellants were harmed because the value of their security was impaired by the CCC's imposition of conditions and restrictions limiting room rates to no more than $150 per night, with no resort fees and reduced parking rates.

7

### a. No Showing of a Duty

Appellants' claim requires "acts of negligence." (*Baldwin, supra,* 79 Cal.App.3d at p. 403.) "[A] duty to the plaintiff is an essential element" of negligence, and "[t]hat duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984, 985.) Appellants' opening brief states, "AMA was negligent in its duty to timely obtain all required government agency permits and approvals for the Shore Hotel." The quoted sentence is the entire discussion of "duty."

Appellants admitted in the trial court and to this court that there is no written contract between Sunshine and AMA. Absent a contract, appellants' claim about AMA's duty to obtain a permit modification from the CCC is pure speculation. Sunshine applied for a permit in 2009, not AMA. The CCC required "*the property owners* to obtain an amendment to the CDP for any deviation from the project description." (Italics added.) Sunshine (i.e., the Farzams) had to be involved in the amendment process. Appellants have failed to show a basis for imposing a duty on AMA that is "imposed by law, . . . assumed by the defendant, or exist[s] by virtue of a special relationship." (*Potter v. Firestone Tire & Rubber Co., supra,* 6 Cal.4th at p. 985.)

### b. No Impairment of Value Occurred

Plaintiffs suing third party wrongdoers for impairment of a security interest must plead facts showing impairment of the value of the security. Without this showing, there is no damage. (*Baldwin, supra,* 79 Cal.App.3d at p. 404.) Appellants cannot allege that the value of their security was impaired by CCC's imposition of restricted room rates: Low to moderate room rates were *a feature* of Sunshine's application to build Hotel and were

8

central to the CCC's authorization of a CDP in 2009, two years before appellants made the Loan.

The NOV shows that Michael Farzam signed an application in 2009, proposing to replace two small motels with "a single limited-amenity moderate priced Travelodge Hotel [that will] increase the number of affordable moderate-priced guestrooms from 87 to 164." (Italics omitted.) His letter to the CCC states, "[T]he Farzams, consistent with City and State policies for the Coastal Zone, elected to pursue a replacement moderately-priced Travelodge rather than yet another new luxury hotel in the Coastal Zone. The Farzams made this decision even though . . . a luxury hotel would be more profitable than a moderately priced Travelodge." (Italics omitted.)

On June 11, 2009, the CCC approved a CDP conditionally authorizing "demolition of two existing motels and construction of a low to moderately priced hotel." Michael Farzam agreed to the terms. The NOV states, "[R]ather than the affordable, moderately-priced Travelodge proposed in [the] CDP application and considered by the Commission, a 'luxury boutique' hotel was constructed on the properties." (Fn. omitted.) The CCC wrote, "The fact that the applicant proposed an affordable, moderately priced hotel was central to the Commission's review of the project." Amendment was not in the cards. (Cal. Code Regs., tit. 14, § 13166, subd. (a) [director of the CCC "shall reject an application for an amendment to an approved permit if he or she determines that the proposed amendment would lessen or avoid the intended effect of an approved or conditionally approved permit"].)

The NOV dooms the Farzams' claim. They funded construction of a hotel permitted to have 164 "low to moderately

9

priced" rooms. Michael Farzam "impaired" the value of the property in 2009 when he applied for a CDP on behalf of Sunshine. The CDP application had to contain "proof that all holders or owners of any interests of record in the affected property have been notified in writing of the permit application and each invited to join as a co-applicant." (Cal. Code Regs., tit. 14, § 13053.5, subd. (b).) Before loaning $58 million, appellants had constructive knowledge of the limitations imposed by the publicly available CDP. The pleading does not show AMA had anything to do with the CDP.

Sunshine violated the CDP, created a luxury hotel, and charged high rates. The CCC discovered the bait-and-switch and held Sunshine to the terms of its agreement. This is not an unforeseeable impairment of appellants' security. If anything, they came out ahead: They funded construction of a hotel with few amenities and 164 moderately priced rooms. Under the negotiated settlement with the CCC, the Hotel has amenities *and* the low-to-moderate rate applies to 72 rooms, not 164 rooms. If appellants believe Sunshine misled them about the type of hotel the CCC authorized, their remedy is to sue Sunshine for fraudulently inducing them to make the Loan.[4] But, such a suit is improbable as Sunshine is their own entity.

### 4. Leave to Amend

Appellants argue that the court abused its discretion by denying leave to amend. (Code Civ. Proc., § 472c, subd. (a); *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.) Appellants have the burden of showing a reasonable possibility

---

[4] In light of our conclusion that the FAC does not state a claim for negligent impairment of security, we need not decide whether the claim is barred by the statute of limitations.

that the complaint's defects can be cured by amendment. (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)

Appellants propose to amend their pleading to "allege much more detail to demonstrate that the value of their security—the Shore Hotel—has been severely impaired by the severe [CCC] permanent restrictions imposed." They cite loss of income in 2020 and diminution of the Hotel's market value.

The proposed amendment does not, and cannot, reach the heart of the problem. The problem is that Michael Farzam obtained a CDP by telling the CCC that his family "elected" to build a "moderately-priced Travelodge rather than yet another new luxury hotel in the Coastal Zone . . . even though . . . a luxury hotel would be more profitable than a moderately priced Travelodge." Affordability was the key factor in the CCC's approval. Appellants cannot complain about lost profits or lower value; a moderately priced Travelodge is what they funded.

There is no indication that Michael Farzam's 2009 application for a CDP was the fault of AMA, and there is no contract showing AMA had a duty to obtain CCC approval of a different or amended CDP. As appellants' reply states, the CCC told Sunshine that "should the project 'change from the project description' of a moderately priced hotel, Sunshine could obtain a new or amended CDP permit." The record shows that Sunshine agreed to build an affordable hotel, then charged excessive rates once the Hotel was in operation, without CCC approval.

11

## DISPOSITION

The judgment is affirmed.  Anthony Mason Associates, Inc., is entitled to its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

12